UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MARTA GONZALEZ,

                         Plaintiff,

      -v-                                    6:07-CV-629

COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                          OF COUNSEL:

EMPIRE JUSTICE CENTER                 LOUISE MARIE TARANTINO, ESQ.
Attorneys for Plaintiff
119 Washington Avenue, 2d Floor
Albany, NY 12210

OFFICE OF REGIONAL GENERAL COUNSEL    VERNON NORWOOD, ESQ.
SOCIAL SECURITY ADMINISTRATION REGION II
Attorneys for Defendant
26 Federal Plaza Room 3904
New York, NY 10278

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I.  INTRODUCTION

          This matter is brought pursuant to §§ 205(g) & 1631(b)(3) of the Social Security

Act, as amended, 42 U.S.C. §§ 405(g) & 1383(c)(3), to review a final determination of the

Commissioner of Social Security denying the plaintiff's claim for Supplemental Security

Income ("SSI").  The parties have filed their briefs, including the Administrative Record on

Appeal, and the matter has been submitted for decision without oral argument.

## II. __BACKGROUND__

Plaintiff Marta Gonzalez alleges onset of disability as of January 1, 2000, due to bipolar disorder, depression, anxiety, and asthma.  Plaintiff's application for SSI was denied, and she requested a hearing.  A hearing was held on September 14, 2005, after which the Administrative Law Judge ("ALJ") found her not disabled in a decision rendered on October 13, 2005.  Gonzalez appealed and the Appeals Council remanded to the ALJ, directing further development of the record and further findings regarding Residual Functional Capacity ("RFC") including use of a vocational expert if warranted.  According to the Appeals Council, new and material evidence from June 3, 2005, through April 3, 2006, had been submitted that may indicate plaintiff's functional limitations were greater than previous evidence showed.  Accordingly, the ALJ held an additional hearing on October 20, 2006, including testimony from a vocational expert.  However, the ALJ again found Gonzalez not disabled.  The Appeals Council denied her request for review.  Therefore, the decision of the ALJ dated December 12, 2006, became the final decision of the Commissioner.

## III.  __DISCUSSION__

### A.  __Standard of Review__

The scope of a court's review of the Commissioner's final decision is limited to determining whether decision is supported by substantial evidence and the correct legal standards were applied.  Poupore v. Astrue, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam) (citing Machadio v. Apfel, 276 F.3d 103, 108 (2d Cir. 2002).; Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987)).  "Substantial evidence means 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Poupore, 566

F.3d at 305 (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 217 (1938)).  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (citing Universal Camera Corp. v. NLRB, 340 U.S. 474, 488, 71 S. Ct. 456, 464 (1951)).  If the commissioner's disability determination is supported by substantial evidence, that determination is conclusive.  Id.

However, "where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards," the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. Martone, 70 F. Supp. 2d at 148 (citing Johnson, 817 F.2d at 986).

A reviewing court may enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g); see Martone, 70 F. Supp. 2d at 148.  "Remand is appropriate where there are gaps in the record or further development of the evidence is needed," such as where new, material evidence has become available.  42 U.S.C. § 405(g); Martone, 70 F. Supp. 2d at 148 (citing Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980)).  A remand for rehearing directing the taking of additional evidence is warranted only if it is shown that new, material evidence "'and that there is good cause for the failure to incorporate such evidence into the record'" at the administrative hearing.  Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 643-44 (2d Cir. 1983) (quoting 42 U.S.C. § 405(g), as amended in 1980)).  Remand may also be appropriate if the Commissioner "misapplies the

law or failed to provide a fair hearing."  Id. at 644.  However, where the underlying

administrative decision is not supported by substantial evidence, reversal is appropriate

because there would be no useful purpose in remanding the matter for further proceedings.

Id. (reversing and remanding solely for calculation of benefits, subject to determination by the

district court of any motion by the agency to remand to consider new evidence); Parker, 626

F.2d at 235 (reversing and remanding solely for calculation and payment of benefits);

Simmons v. United States R.R. Ret. Bd., 982 F.2d 49, 57 (2d Cir. 1992) (same); Williams,

859 F.2d at 261 (same).

### B.  Disability Determination - The Five Step Evaluation Process

The Social Security Act defines "disability" to include the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  In

addition, the Act requires that a claimant's

> physical or mental impairment or impairments [must be] of such severity
> that he is not only unable to do his previous work but cannot, considering
> his age, education, and work experience, engage in any other kind of
> substantial gainful work which exists in the national economy, regardless
> of whether such work exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or whether he would be
> hired if he applied for work.

Id. § 423(d)(2)(A).

The Administrative Law Judge ("ALJ") must follow a five step evaluative process in

determining whether an individual is disabled.  See 20 C.F.R. §§ 404.1520, 416.920. In the

first step the ALJ must determine whether the claimant is engaging in substantial gainful

activity.  If the claimant is engaging in substantial gainful activity he is not disabled and he is not entitled to benefits.  Id. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged is substantial gainful employment, then step two requires the ALJ to determine whether the claimant has a severe impairment or combination of impairments which significantly restricts his or her physical or mental ability to perform basic work activities.  Id. §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from a severe impairment, then step three requires that the ALJ determine whether the impairment meets or equals an impairment listed in Appendix 1 of the regulations. Id. §§ 404.1520(d), 416.920(d); see also id. Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively disabled."  Martone, 70 F. Supp. 2d at 149 (citing Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires the ALJ to  assess whether the claimant's residual functional capacity ("RFC") precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(f), 416.920(f).

If the opinion of a treating physician is "'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record'" it is given significant weight.  Poupore, 566 F.3d at 307 (quoting 20 C.F.R. § 404.1527(d)(2)).  However, where the treating physician's opinion is not supported by medical evidence, it is not entitled to significant weight.  Id.

The burden of proof with regard to the first four steps is on the claimant.  Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996); Ferraris, 728 F.2d at 584.

If it is determined that claimant cannot perform past relevant work, the burden shifts to the agency for the fifth and  final step.  Perez, 77 F.3d at 46.  This step requires the

agency to examine whether the claimant can do any type of work.  20 C.F.R. §§ 404.1520(g), 416.920(g).  The regulations provide that "factors such as a claimant's age, education, and previous work experience" should be evaluated to determine whether a claimant has the residual functional capacity to perform work in any of five categories of jobs: very heavy, heavy, medium, light, and sedentary."  Perez, 77 F.3d at 46 (citing 20 C.F.R. § 404, Subpt. P, App. 2).  "[T]he Commissioner need only show that there is work in the national economy that the claimant can do; he need not provide additional evidence of the claimant's residual functional capacity."  Poupore, 566 F.3d at 306.

        A claimant may seek review of an adverse decision by the ALJ from the Appeals Council.  Perez, 77 F.3d at 44.  If review is granted, the decision of the Appeals Council is the final decision of the Commissioner.  Id.  If review is denied, then the final decision is that of the ALJ.  Id.  The final decision is judicially reviewable pursuant to 42 U.S.C. § 405(g).

        **C.  Analysis**

        Plaintiff first argues that the ALJ failed to give proper weight to the medical evidence in that all the treating sources and the consultative examiner, Dr. Nieves, agreed that she suffered from Major Depression with Psychotic features, she needed long-term psychiatric care with appropriate medication, and her prognosis for competitive employment was very poor.  Second, plaintiff contends that the ALJ improperly discredited her statements.  Finally, Gonzalez argues that the ALJ erred in the fifth evaluative step by relying on the vocational expert's response to a hypothetical question that omitted limitations of concentration and pace.

As to plaintiff's first argument, the ALJ did give weight to the medical evidence and found that she suffered from a depressive disorder. (Tr.[1] at 17-18.)  The consultative examiner, Dr. Nieves, determined on January 30, 2004, that Gonzalez suffered from major depression with psychotic features and recommended long-term psychiatric treatment including pharmacotherapy and counseling. Id. at 207.  Outpatient notes dated in 2000 and 2001 from the New Beginnings Community Counseling Center indicate that plaintiff suffers from major depression disorder. Id. at 166, 171.  In 2002, psychiatric nurse practitioner Heidi VanDeusen at St. Mary's Comprehensive Mental Health and Alcoholism Center noted that Gonzalez suffered from a recurrent major depressive disorder. Id. at 193.  However, it was also noted that she appeared only "mildly depressed" and her judgment and insight appeared good. Id.

Plaintiff's treating psychiatrist during the time period of September 26, 2002, to May 20, 2005, Nagaraj Jajoor, M.D., found that she suffered from major depression recurrent without psychotic features. Id. at 196.  In 2002, Dr. Jajoor noted that plaintiff had fairly good memory and insight, as well as intact judgment, but that her concentration was poor. Id. However, in 2004, Dr. Jajoor observed that Gonzalez presented herself in such a manner that he did not see her as someone who was depressed. Id. at 189.  He advised her that no medicine would fix everything for her, and she should work in therapy or take parenting classes to handle the stresses of her children and extended family. Id.  In a 2005 visit Dr. Jajoor saw no evidence of habit deterioration or lack of self care and no major stress. Id. at 278.  He saw "no symptoms of depression evident" and no anxiety or psychosis. Id.

---

[1] The Administrative Record on Appeal is cited as "Tr."

However, he questioned her medication compliance, and encouraged her to stay in therapy to deal with stress and anger management.  Id.

Gonzalez was voluntarily hospitalized at St. Mary's on May 26, 2005.  Id. 312-20. Upon her admission she had no thought disorder but her mood was anxious and depressed. Id. at 312.  She was discharged the next day with no change in medications, no findings of psychosis, and not acutely depressed.  Id. at 313.  She was directed to go home and work on her issues with her children and continue therapy.  Id.  During a follow up visit to Dr. Jajoor on June 3, 2005, plaintiff denied significant depression and anxiety.  Id. at 333.  Again on August 31, 2005, she denied signification problem with depression and anxiety, and Dr. Jajoor found no psychomotor agitation and no evidence of psychosis.  Id. at 332.  On December 15, 2005, Dr. Jajoor again saw no evidence of depression other than her typical stress-related depression and irritability related to problems with her children.  Id. at 330.

Gonzalez's next psychiatric appointment was on February 22, 2006, with Jacqueline Pasco, M.D.  Id. at 327-29.  Dr. Pasco diagnosed a mood disorder with consideration for bipolar disorder, and to rule out major depressive disorder, chronic with psychotic features.  Id. at 328.  On August 9, 2006, Dr. Pasco responded to a request for information from the ALJ.  She stated that plaintiff was transferred to her as a patient "because she did not feel that Dr. Jajoor was being attentive to her needs, specifically her request to be put out of work."  Id. at 342.  Dr. Pasco clarified that her questionnaire responses of marked restriction on daily activities, maintaining social functioning, and difficulties of concentration, persistence or pace were based upon a single meeting with her. Id.  Further, Dr. Pasco opined that plaintiff's problems arose from taking care of her four

children.  Id. at 342-50.  It is notable that at a visit with Dr. Pasco on June 20, 2006, Gonzalez denied any symptoms of psychosis.  Id. at 350.

The foregoing evidence from treating sources indicates that plaintiff did have a depressive disorder.  The ALJ's finding to that effect does not conflict with that of the consultative examiner Dr. Nieves, nor of her therapist, Daniel Swanson, as plaintiff contends.  See id. at 205-07, 269-310.  However, Dr. Nieves' opinion that plaintiff's prognosis for competitive employment was very poor was properly given little weight by the ALJ because it was based upon a one-time interview and was inconsistent with the medical evidence in the record, especially that of treating psychiatrists Dr. Jajoor and Dr. Pasco.

As to Gonzalez's credibility, the ALJ explained that the record evidence reflects that she described situational periods of stress arising from problems with her children, her extended family, and financial difficulties, rather than any underlying psychopathology.  Further, also reflected in the record were Gonzalez's consistent efforts to have her psychiatrists and therapist deem her unable to work and fill out Social Services documentation to that effect.  The ALJ also noted plaintiff's failure to consistently follow her prescribed medication regimen and her failure to report caring for children other than her own, possibly for remuneration.  There is substantial evidence in the record to support the ALJ's findings in this regard, including his conclusion that plaintiff's claims as to the extent that her mental condition precludes her from working are not credible.  This is not, as Gonzalez contends, an "isolated discrepancy."

Plaintiff also argues that her earning money babysitting would have no impact on her case because the ALJ did not consider it substantial gainful activity.  However, the ALJ explained that babysitting children is demanding work, belying plaintiff's contention that her

mental condition precludes her from performing <u>any</u> work.  Thus, the fact that her caring for other children was not substantial gainful activity (because it was part-time earning her a minimal $60 to $70 per week) is irrelevant to the ALJ's credibility determination.  Similarly, consideration of her "well-dressed and well-manicured" appearance and her plans to "vacation" in Puerto Rico (her birth-place) for the summer were considered by the ALJ as indicative of plaintiff's ability to function and handle social situations, contrary to plaintiff's claims of complete inability to function due to her mental condition, which the ALJ found to be not credible.

Plaintiff's final argument is that the ALJ erred in finding that work existed in the national economy that plaintiff could perform.  The ALJ solicited testimony from a vocational expert, Salvatore Anthony Garozzo, in this regard.  <u>Id</u>. at 476-86.  The ALJ posed the hypothetical of whether work existed in the national and regional economy that could be done by a 33-year old person with an eighth-grade education in Puerto Rico, without a General Equivalency Diploma, who could do medium work but is limited by non-exertional impairments as follows:  no concentrated gases, fumes, odors, smoke, dust or poor ventilation; simple decision making only; low stress; no planning; no scheduling; no report-writing; no supervising; no multi-tasking; little or no change in the work environment or setting; occasional but not frequent interaction with the public and coworkers; work in proximity to but only occasionally in coordination or conjunction with coworkers; no reading in English required for instructions to do the job; and entry level only job.  The vocational expert identified dish washer and laundry worker as jobs available with those restrictions.  When asked to identify jobs with the same limitations at a light exertional level, the vocational

expert pointed to housekeeper and assembly worker.  The vocational expert could identify no jobs at the sedentary exertional level with those limitations.

Upon questioning by plaintiff's counsel, the vocational expert testified that at the medium exertional level, a less-than-average production ability would only be tolerated if the person had the additional support of a job coach.  Further, an absenteeism rate of three days a month on average would not be tolerated by employers for laundry and housekeeping positions.  The vocational expert also testified that with a low production output of 50 percent or less, an employer of an assembly worker would have less tolerance than that of a housekeeper, and the assembly worker probably would not be retained.  He indicated that there was no problem with exposure to environmental contaminants such as gases and fumes for a laundry worker, and that an occasional limitation in concentration, persistence or pace would not limit the person's ability to perform any of the jobs he identified.  He opined as well that a person that would need to be prompted to be able to do their work two-thirds of the time would be precluded from the jobs he listed.

Gonzalez contends that the ALJ disregarded the hypotheticals posed to the vocational expert by her counsel with additional limitations of inability to concentrate frequently or at least two-thirds of the time.  Gonzalez points to the May 2005 report of Daniel Swanson, Tr. at 269, and Dr. Nieves' January 2004 report, id. at 205-07.  Although Daniel Swanson was plaintiff's therapist from 2002 to 2005, plaintiff points to only one report by him that indicated "difficulties of concentration, persistence or pace resulting in frequent failure to complete tasks (in work settings or elsewhere)."  Id. at 269.  Significantly, his progress note of May 18, 2005, indicates that plaintiff's difficulties stem from her relationship with one of her daughters, as well as her extended family, and that she does not acknowledge a need to

- 11 -

participate in therapy.  Id. at 271.  This is consistent with Dr. Jajoor's opinion that a majority of plaintiff's problems relate to her inability to deal with the stress of four children and an extended family, rather than in her depressive disorder.  Additionally, as noted previously, Dr. Nieves was a consultative source who wholly derived his opinion from plaintiff's account of her own limitations.  Moreover, neither Swanson nor Dr. Nieves specifically opined that plaintiff would be unable to complete repetitive tasks two-thirds or more of the time. Additionally, Dr. Pasco, who became plaintiff's treating psychiatrist after Dr. Jajoor reportedly refused to say that plaintiff was unable to work, opined that plaintiff could perform simple, concrete tasks.  Id. at 342-45.  Thus, the hypotheticals upon which the ALJ relied for his determination that work exists in the national and regional economies that plaintiff can perform accurately reflected Gonzalez's limitations.

## IV.  CONCLUSION

The ALJ gave proper weight to the opinions of plaintiff's treating psychiatrists Drs. Jajoor and Pasco, and properly assigned weight to a consultative examiner and plaintiff's therapist, an unacceptable medical source.  Further, the ALJ properly discredited Gonzalez's allegations of the extent that her depression restricted her functionality as inconsistent with the medical evidence and her own accounts of her daily activities.  Finally, the hypothetical posed by the ALJ to the vocational expert accurately reflected plaintiff's limitations supported by substantial evidence in the record, leading to the ALJ's finding that work existed in the national and regional economies that Gonzalez could perform so she was not disabled.

Accordingly, it is

ORDERED that the decision of the Commissioner is AFFIRMED and the complaint is DISMISSED.

IT IS SO ORDERED.

_____
United States District Judge

Dated: January 5, 2010
      Utica, New York.